DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB. No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAYNE HUNTER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TEXAS ROADHOUSE, INC. and TEXAS ROADHOUSE MANAGEMENT CORP.,<br><br>　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

COMES NOW Plaintiff, Wayne Hunter, by and through counsel of record Casperson Ulrich Dustin PLLC, and for cause of action against Defendants Texas Roadhouse, Inc. and Texas Roadhouse Management Corp., alleges and complains as follows:

### JURISDICTION AND VENUE

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; and 42 U.S.C. § 2000e.

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Wayne Hunter ("Hunter") is a male citizen and resident of the United States of America, who resides in Ammon, Idaho.

5. Hunter worked for Defendants Texas Roadhouse, Inc. and Texas Roadhouse Management Corp. (collectively "Texas Roadhouse" or "Defendants") in Ammon, Idaho for approximately seven (7) years.

6. Defendant Texas Roadhouse, Inc. is a Delaware corporation. Texas Roadhouse Management Corp. is a Kentucky corporation. Defendants operate 537 restaurants in 49 states and six foreign countries, including 516 Texas Roadhouse restaurants and 21 Bubba's 33 restaurants. Defendants own and operate a Texas Roadhouse restaurant in Ammon, Idaho.

7. At all times material to this Complaint, Defendants regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendants within the ambit of 42 U.S.C. § 12101, *et seq.*

## FACTS COMMON TO ALL COUNTS

8. Hunter realleges and incorporates by reference paragraphs 1 through 7 as though fully set forth herein.

9. Hunter began working at Texas Roadhouse in Ammon, Idaho in about 2010.

10. At the time of discharge, Hunter was the kitchen manager at the Ammon location.

11. At all relevant time periods, Hunter satisfactorily performed his job duties.

12. As kitchen manager, Hunter was off on Sundays and Mondays. Tuesdays, he worked 10:00 am to close, which could be after midnight. He then worked Wednesdays and Thursdays from 2:00 pm to close, and Fridays and Saturdays from 6:30 am to 8:00 pm or later.

13. Aside from managing the kitchen while the restaurant was open for business, Hunter was also responsible for doing inventory every Tuesday and doing the ordering Tuesdays and Saturdays.

14. Hunter suffers from epilepsy. He started having seizures when he was twelve (12) years old. He averages one seizure per month. The seizures usually last 30 to 90 seconds and most commonly occur at home.

15. The seizures are very subtle. When they come on, Hunter will "zone out" for a minute or two. If another person tries to force him to move or sit, he will resist, but if the other person gently guides him to a chair, he will simply sit for a few minutes until the seizure passes. Hunter's seizures can occur at any time, but fatigue appears to be a contributing factor to the onset of his seizures.

16. Hunter takes medication to manage his symptoms. The medication helps reduce the length of the seizures.

17. During the seven years Hunter worked at Texas Roadhouse, he missed only three days of work due to his epilepsy and could perform the essential functions of his job with only minimal accommodations. Hunter never posed a danger to himself or others during any seizure he experienced while at work.

18. On or about October 13, 2017, Hunter had a subtle seizure at work. Mike Murphy ("Murphy"), the Texas Roadhouse Area Director, was visiting the Ammon location at the time of the episode. Murphy sent Hunter home that day and told him to apply for "medical

leave" through the company-sponsored insurance plan. Although Hunter did not believe he needed short-term disability, Hunter went home and applied for short-term disability benefits as directed. The application was denied because Hunter was capable of working.

19. Hunter did not fall or drop anything during the seizure, he simply zoned out for a few minutes.

20. Hunter visited his doctor shortly after the seizure. The doctor adjusted his medications and wrote a note for Hunter to take to Texas Roadhouse explaining that Hunter needed eight (8) hours of sleep between shifts in order to minimize any seizures.

21. The schedule Hunter had been working did not allow that much time to rest between shifts. When he would close the restaurant, he would often be at the restaurant until after midnight. Then, if he was assigned the opening shift the next day, he would have to be at the restaurant by 10:00 a.m. or earlier the next day. The schedule was causing a lot of fatigue, which could have contributed to the seizure on or about October 13, 2017.

22. Following the seizure, Hunter used some vacation days to rest.

23. On November 5 or 6, 2017, Hunter presented the note from his doctor to Chris Duran ("Duran"), the General Manager of the Ammon location. Duran read the note and said he would change Hunter's schedule so that he did not close the restaurant the night before he had to open.

24. On or about November 15, 2017, Hunter experienced another subtle seizure at work. Again, Hunter did not fall or drop anything or otherwise endanger himself or anyone else during the seizure. Duran witnessed the seizure.

25. Hunter always carries two doses of medication. One of the cooks unwittingly gave Hunter both pills (a double dose) during the seizure. As a result of the double dose, the side effects

of the medication took approximately 45 minutes to wear off. Duran allowed Hunter to remain at work to finish his shift while Duran left the restaurant for the day.

26. The day after the seizure, Hunter went to work at around 2:00 pm to start his shift. Duran asked to speak with Hunter in the dining room. Duran then told Hunter that Duran needed to let Hunter go because of his seizures and because the new work schedule to accommodate his disability was not working out and that he believed Hunter was a danger to himself and others.

27. On or about March 26, 2018, Hunter filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

28. On or about April 16, 2018, Hunter received his Notice of Right to Sue Letter from the EEOC. Hunter has exhausted his administrative remedies.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT DISCRIMINATION

29. Hunter realleges and incorporates by reference paragraphs 1 through 28 as though fully set forth herein.

30. Hunter had a disability as defined by the ADAAA in that he had an actual disability, a record of disability, or was regarded as disabled by Defendants.

31. Hunter was qualified for his job as Kitchen Manager, and was able to perform the essential functions of his job.

32. Hunter's disability substantially limits one or more major life activities, including his ability to focus, concentrate, sleep, and work.

33. Hunter was subjected to adverse employment actions by Texas Roadhouse when it discharged Hunter on or about November 16, 2017, on the basis of his disability.

34. As a direct and proximate result of Texas Roadhouse's actions and/or failure to act, Hunter has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Hunter is thereby entitled to general and compensatory damages in an amount to be proven at trial as well as any other equitable remedies available to him.

35. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Hunter's federally protected rights, for which Hunter is entitled to punitive damages.

## COUNT II
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
## FAILURE TO ACCOMMODATE

36. Hunter realleges and incorporates by reference paragraphs 1 through 35 above, as though fully incorporated herein.

37. Hunter requested a reasonable accommodation for his disability including a change to his work schedule to allow for at least eight (8) hours rest between shifts, and brief rest periods if he experienced a seizure at work.

38. Texas Roadhouse provided a reasonable accommodation initially, but later refused to continue to provide the accommodation, and instead, terminated Hunter's employment.

39. As a direct and proximate result of Texas Roadhouse's actions and/or failure to act, Hunter has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Hunter is thereby entitled to general and compensatory damages in an amount to be proven at trial as well as any other equitable remedies available to him.

40. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Hunter's federally protected rights, for which Hunter is entitled to punitive damages.

## ATTORNEY'S FEES

41. As a further direct and proximate result of Defendants' actions and/or failures to act, Hunter has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which Defendants should be required to pay pursuant to 42 U.S.C. § 12205 and 42 U.S.C. § 2000e-5(k), *et seq.*

## DEMAND FOR JURY TRIAL

Hunter demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Hunter seeks judgment against Defendants as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3. For attorney's fees pursuant to statute and costs of suit; and

4. For such other and further relief as the Court deems just and proper.


Dated this 6th day of July, 2018

/s/
DeAnne Casperson
CASPERSON ULRICH DUSTIN PLLC