UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WAYNE HUNTER<br><br>Plaintiff,<br><br>v.<br><br>TEXAS ROADHOUSE, INC. and TEXAS ROADHOUSE MANAGEMENT CORP.,<br><br>Defendants. | Case No. 4:18-cv-00296-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants Texas Roadhouse, Inc. and Texas Roadhouse Management Corp.'s ("Texas Roadhouse") Motion for Summary Judgment (Dkt. 17) and Plaintiff Wayne Hunter's Motion for Summary Judgment (Dkt. 21). For the reasons stated below, the Court GRANTS in PART and DENIES in PART Texas Roadhouse's motion and DENIES Hunter's motion.

## II. BACKGROUND[1]

Hunter worked as a kitchen manager at Texas Roadhouse in Ammon, Idaho, from June 23, 2010, to November 17, 2017. Since childhood, Hunter has suffered from seizures due to his epilepsy. These unpredictable seizures rarely manifest by the loss of bodily

---

[1] The facts are drawn from both motions for summary judgment. In this section, the facts given will be neutral, but in its analysis the Court construes all facts in the light most favorable to the nonmoving party, respectively. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Unless otherwise referenced, the following facts are undisputed.

MEMORANDUM DECISION AND ORDER – 1

functions and convulsions, but more typically include a loss of consciousness and haziness. Between 2010 and 2015, Hunter would experience around five seizures a week, averaging two during the day and three at night. From January 2015 to the termination of his employment at Texas Roadhouse, these seizures would occur two to six times per month. Hunter has found that medication, sleep, and lack of stress help reduce the frequency of his seizures, but he has not found a way to be rid of them altogether.

At times, Hunter would experience these seizures while at work. For example, Hunter's co-workers reported that during these seizures Hunter would do things like sit down on a package of meat, wash the floor with his spit and his hands, or push an employee up against the wall.[2] At no time was another employee injured, and only once was Hunter injured during one of his seizures. On January 28, 2015, Hunter had a seizure and injured himself by burning his hand with extremely hot water. Though the majority of these seizures passed without incident or injury, they still required assistance from Texas Roadhouse. Hunter's co-workers would help him whenever he had a seizure by doing things like walking him to the office to recover, giving him his medication, getting him a glass of water, or covering his station for a few minutes until he was able to return to work. Occasionally, a Texas Roadhouse employee would drive Hunter home following a seizure.

In May 2016, Texas Roadhouse became concerned with the seizures and requested that Hunter undergo a fitness for duty examination. Hunter's physician, Dr. Bradford Talcott, found that Hunter presented a safety hazard and recommended a short-term

---

[2] Hunter claims to have no recollection of many of these seizures but admits that a common feature of his seizures is memory loss during the time the seizure occurred.

medical leave until Hunter was able to visit the University of Utah for further evaluation. Texas Roadhouse provided Hunter with a paid leave of absence from May 5, 2016 through June 2, 2016, and a $1,000 bonus to help cover the medical expenses.

On June 3, 2016, Hunter returned to work without restriction, but still continued to experience seizures. Texas Roadhouse received two more letters from Dr. Talcott, one in March 2017 and the other in May 2017. The March letter stated that Hunter was taking medications for his seizures but was still susceptible to them, and the May letter stated that Hunter experienced a seizure while at an appointment with Dr. Talcott. However, Texas Roadhouse continued to employ and accommodate Hunter.

Then, in late October 2017, Hunter experienced two seizures relatively close together (about one week apart) while at work. Texas Roadhouse informed Hunter that they were again concerned with his seizures and told him to take some time off to see his doctor. Hunter used his accrued vacation days and took off from work October 20, 2017 to November 7, 2017. On November 8, 2017, Hunter returned to work with a note from Dr. Talcott stating that Hunter's work schedule needed to be rearranged because Hunter needed eight hours of sleep a night. Texas Roadhouse immediately gave Hunter a new schedule which allowed him to sleep for eight hours a night.

On November 16, 2017, Hunter experienced another seizure while at work. Though Hunter was an excellent employee who provided training to other Texas Roadhouse restaurants and had even won an employment-related award a month prior, due to the

number of seizures Hunter was having on November 17, 2017, Texas Roadhouse terminated his employment.

Hunter filed his Complaint on July 6, 2018, alleging causes of action for Discrimination and Failure to Accommodate under the Americans with Disabilities Act Amendments Act ("ADA").

### III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts,"

supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment—where both parties essentially assert that there are no material factual disputes—does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

## IV. ANALYSIS

Hunter asserts two claims against Texas Roadhouse: an unlawful discharge claim and a failure to accommodate claim. To succeed on an unlawful discharge claim under the ADA, a plaintiff must show that "(1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001). To succeed on a failure to accommodate claim, a plaintiff must show that the employer failed to provide reasonable accommodation where "the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)). Both claims require the plaintiff to prove he is a qualified individual.

The parties contest only two issues: (1) whether Hunter was a qualified individual under the ADA; and (2) if Hunter's termination alone qualifies as a failure to accommodate. Resolving these issues will determine whether Hunter has met his burden for both his unlawful discharge claim and failure to accommodate claim. The Court will address each issue in turn.

## A. Qualified Individual

The ADA defines a "qualified individual" as an individual "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Employers who fail to accommodate an individual who seemingly meets the definition of a "qualified person" may assert the affirmative defense that the individual poses a "direct threat to the health or safety of the individual or others in the work place." 29 C.F.R. § 1630.15(b)(2); *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 86–87 (2002) (holding 29 C.F.R. § 1630.15(b)(2) valid). In other words, if an employee poses a direct threat to himself or others, he is not a qualified individual under the ADA and cannot succeed on claims for unlawful discharge or failure to accommodate. Because it is an affirmative defense, the employer bears the burden of proving that an employee constitutes a direct threat. *Hutton*, 273 F.3d at 893 (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999).

A direct threat "means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29 C.F.R. § 1630.2(r). A determination that an individual poses a direct

threat must be based on an "individualized assessment of the individual's present ability to safely perform the essential functions of a job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." *Id*; *Echazabal v. Chevron U.S.A., Inc.*, 336 F.3d 1023, 1026 (9th Cir. 2003). Factors to be considered are: "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm." 29 C.F.R. § 1630.2(r); *Hutton*, 273 F.3d at 893.

Here, it is undisputed that Hunter is an individual with a disability and that Hunter's work quality as a kitchen manager was good, if not great. Texas Roadhouse employed Hunter for over seven years, during which time Hunter provided training to other Texas Roadhouse restaurant locations in addition to his own job duties and was named one of the co-kitchen managers of the quarter in a ten-store region. Hunter claims, and Texas Roadhouse does not dispute, that he possessed the necessary skills to be a kitchen manager.

Despite his job performance, Texas Roadhouse claims that Hunter is not a qualified individual under the ADA because he poses a direct threat due to his epileptic seizures. Texas Roadhouse does not take issue with the quality of Hunter's work, nor does it allege that Hunter's epilepsy had any significant negative impact on his job performance, but simply that his epilepsy caused him to be a danger to himself and others. To support this assertion, Texas Roadhouse relies on Dr. Talcott's May 2016 letter, which stated that Hunter presented a safety hazard.

Texas Roadhouse additionally relies on the seizures Hunter experienced between January 28, 2015 and November 16, 2017, coupled with common sense. According to numerous Texas Roadhouse employees, Hunter experienced many seizures while at work. Even though only one of these resulted in an injury, Texas Roadhouse argues that any number of them could have, like when a co-worker had to remove a knife from Hunter as he continued to cut meat during a seizure or when Hunter pushed another co-worker into a wall. It goes to reason, Texas Roadhouse contends, that the already-dangerous environment of hot flat-tops, scorching oil and grease, steam wells, boiling water, and sharp knives is magnified greatly when coupled with Hunter's seizures, *i.e.*, that Hunter poses a direct threat.

Hunter contends that Texas Roadhouse did not base its decision to terminate Hunter on "reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence," citing 29 C.F.R. § 1630.2(r). He argues that Texas Roadhouse had only four notes from Dr. Talcott, which is far less medical evidence than courts relied on in other cases, and in any case two of the four notes stated only that Hunter was still experiencing seizures, something Texas Roadhouse was already aware of. Moreover, Dr. Talcott's note stating that Hunter was a safety risk was written one and a half years before Hunter's termination, and the more recent note written in October 2017 stated that Hunter was fit for work if he was able to get more sleep, which accommodation Texas Roadhouse provided.

Hunter further argues that the best available objective evidence does not support Hunter's termination. Hunter supports this argument by pointing to the fact that his seizures

injured him only once and never harmed anybody else during his seven-year employment with Texas Roadhouse. Compared to the thirty-two workers compensation claims that were made at the Ammon Texas Roadhouse location, two of which involved the seizures of a different employee (and on one of those occasions an ambulance was called), Hunter claims that the best objective evidence shows that he was not a risk.

When viewed in a light most favorable to each party, respectively,[3] the Court finds that there are issues of material fact and that a reasonable juror could decide in favor of either party. *Zetwick* 850 F.3d at 441.The medical evidence Texas Roadhouse relied on is tenuous at best. At one-point Dr. Talcott did opine that Hunter was a safety hazard, but that was one and a half years before Texas Roadhouse's decision to terminate Hunter's employment. During this time span, Dr. Talcott notified Texas Roadhouse that Hunter was still prone to seizures, and Texas Roadhouse continued to employ Hunter. Hunter did experience a few seizures during this time period, but there were no reported injuries. The next time Texas Roadhouse heard from Dr. Talcott, which was less than a month before Hunter's termination, Dr. Talcott stated that Hunter was fit for work. In other words, Texas Roadhouse relied on only four doctor's notes in electing to fire Hunter. Two of these notes provided no assistance in determining whether Hunter was fit for work, one of them was a blanket statement that Hunter posed a safety risk, and the most recent one said that he was fit for work. None of these notes, though, provided any meaningful information for

---

[3] Again, these are competing motions for summary judgment. Texas Roadhouse seeks, *inter alia*, that the Court find, as a matter of law, that Hunter is not a qualified individual under the ADA due to the direct threat defense. Hunter, on the other hand, seeks summary judgment against Texas Roadhouse's direct threat affirmative defense.

evaluating "(1) The duration of the risk; (2) The nature and severity of the potential harm; (3) The likelihood that the potential harm will occur; and (4) The imminence of the potential harm." 29 C.F.R. § 1630.2(r).

The best available objective evidence supports both parties' respective positions. On one hand, evidence shows that Hunter's seizures only caused one relatively minor injury in a seven-year span, a remarkable statistic considering the dangers present in a restaurant's kitchen, such as hot flat-tops, scorching oil and grease, steam wells, boiling water, and sharp knives. On the other hand, the evidence shows that Hunter experienced numerous seizures in this dangerous environment, though Hunter disputes his actions during some of these seizures. Even though only one resulted in injury, the potential for severe harm to Hunter was great. *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835–36 (11th Cir. 1998) (finding LaChance, a line-cook with epilepsy, posed a direct threat, partly because "LaChance admits that if he had continued working at Duffy's, he would have had seizures on the job which would have posed a risk of harm to himself and others because of the appliances involved in the duties of a line-cook."). As Texas Roadhouse's managing partner put it, "[h]ow many times can you run a stop sign before you get T-boned?" Dkt. 19, at 8.

Texas Roadhouse relies on three cases for their argument: *Hutton*, *LaChance* and *Jarvis v. Potter*, 500 F.3d 1113 (10th Cir. 2007). In *Hutton*, the plaintiff suffered from diabetic seizures and worked at a chlorine plant. *Hutton*, 273 F.3d at 886. The Ninth Circuit, relying on the four factors in 29 C.F.R. § 1630.2(r), found that:

  (1) The duration of the risk would exist for as long as Hutton held the chlorine finishing operator's job; (2) The nature and severity of the potential harm is catastrophic—many lives could be lost; (3) Although the likelihood that the potential harm will occur is small, whether and when it will occur cannot be predicted; and (4) The imminence of the potential harm is, as explained, unknown because of the unpredictability of Hutton's condition.

*Id.* at 894. The analysis in *Hutton*, however, was based on the reports and advice from no less than six doctors who conducted numerous examinations on the plaintiff. *See id.* at 887–91.

In many ways, the facts of *Hutton* align with this case. The duration of the risk would extend as long as Hunter held a kitchen position at Texas Roadhouse, the likelihood of the harm is small but cannot be predicted, and the imminence of the potential harm is unknown because of the unpredictability of Hunter's condition. Though it is not likely that many lives could be lost due to Hunter's seizures in the workplace, it is quite possible that the harm could be quite severe. However, unlike *Hutton*, Texas Roadhouse has only four bare-boned notes from Dr. Talcott, and only one of which supports their direct threat by stating that Hunter presents a safety hazard.[4] This distinguishes this case from *Hutton*.

*LaChance*, an Eleventh Circuit case, is also unconvincing. In *LaChance*, the plaintiff, a line-cook at a restaurant, suffered from seizures virtually identical to Hunter's. *LaChance,* 146 F.3d at 833–34 ("When [LaChance] had a seizure, he did not lose consciousness, but would become dazed and disoriented for anywhere from a few seconds to minutes. He generally would have poor recollection of what happened during the seizure,

---

[4] As the Court has said, two of the four notes (March 2017 and May 2017) simply stated that Hunter was experiencing seizures. This is evidence that Hunter had a disability, but not evidence that he posed a direct threat. A company's policy or requirement that a disability be "100% healed" is a *per se* violation of the ADA. *McGregor v. National R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999).

and although sometimes he could continue functioning, at other times he would wander off seemingly in a daze."). LaChance suffered three seizures over his first two shifts. *Id.* at 834. He was given two weeks off to stabilize his condition but was discharged before he could return to work. *Id.* In moving for summary judgment, the only medical evidence the defendant relied on was a note from the plaintiff's doctor stating that "a person with the kind of seizures [the plaintiff] experienced should be restricted from working with flat top grills, hot ovens, fryers with boiling grease, and slicing machines," which are exactly the job responsibilities that the defendant required its line-cooks to do. *Id.*

Though *LaChance* appears to be factually on point with this case, it does not persuade the Court to follow its reasoning. Importantly, the defendant fired LaChance after he had worked only two shifts. This did not provide the defendant much time to make an individualized assessment "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." 29 C.F.R. § 1630.2(r). Instead, the defendant relied on only its own logical but subjective reasoning that LaChance's epilepsy made him a liability when it elected to discharge him. The Eleventh Circuit found that this was sufficient for the defendant to utilize a self-defense threat. However, the Ninth Circuit prohibits this Court from relying on an employer's own subjective reasoning, even if made in good faith. *Echazaabal*, 336 F.3d at 1028 ("A subjective belief in the existence of a risk, even one made in good faith, will not shield the decisionmaker from liability.") (citing *Bragdon v. Abbott,* 524 U.S. 624, 649 (1998)). Additionally, LaChance's doctor stated that LaChance should be restricted from performing the duties which the defendant required line-cooks such as LaChance to do.

Here, Dr. Talcott has never said that Hunter should be restricted from performing the essential functions of his position but has in fact stated that he is capable of doing them, albeit with minor accommodations to his schedule.

Texas Roadhouse also relies on *Jarvis* for the proposition that "the fact-finder does not independently assess whether it believes the employee posed a direct threat," but instead "determine[s] whether the employer's determination was objectively reasonable." Dkt. 18, at 5. The *Jarvis* court came to this conclusion based on its interpretation of *Bragdon*. *Jarvis*, 500 F.3d at 1122 ("As we understand *Bragdon v. Abbott*, 524 U.S. 624(1998), the fact-finder's role is to determine whether the employer's decision was objectively reasonable.") The Ninth Circuit has not adopted the Tenth Circuit's interpretation of *Bragdon*. The Court at this time also declines to adopt *Jarvis*'s interpretation of *Bragdon*,[5] but notes that even if it did a question of fact would still remain for the jury.

With all that being said, the Court also cannot determine as a matter of law that the direct threat defense is unavailable to Texas Roadhouse. Viewing the facts in a light most favorable to it, there is enough evidence to support this defense. A reasonable juror could conclude that Hunter posed a direct threat to himself and others based on the objective evidence that he experienced a number of seizures in a dangerous work environment and

---

[5] *Bragdon* was not an employment case but was decided under a health-care section of the ADA. *Jarvis*, 500 F.3d at 1122. The *Bragdon* court concluded that "courts should assess the objective reasonableness of the views of health care professionals without deferring to their individual judgments . . ." when determining significant risk, *Bragdon,* 524 U.S. at 650, which *Jarvis* determined to be the equivalent to direct threat, *see Jarvis,* 500 F.3d at 1122–23. The Court is not explicitly rejecting *Jarvis*'s interpretation, but is simply declining to adopt it at the present time.

that Texas Roadhouse was not obligated to wait around for any serious harm—and the possible concurrent liability—to occur before it terminated Hunter's employment. Additionally, Texas Roadhouse did request that Hunter complete a fitness-for-duty examination and received four medical notes from Dr. Talcott concerning Hunter's epilepsy. A reasonable juror could conclude that Texas Roadhouse satisfied its duty to rely on the best available medical knowledge and/or best objective evidence.

In sum, neither party has presented sufficient evidence to warrant summary judgment in their favor concerning whether Hunter was a direct threat and therefore not a qualified individual under the ADA. As the only element in dispute in Hunter's unlawful discharge claim is whether he is a qualified individual, the Court holds that his unlawful discharge claim may proceed to the jury, and Texas Roadhouse may present its direct threat affirmative defense. Because there are additional disputed elements related to Hunter's failure to accommodate claim, the Court will turn to that claim in more detail.

**B. Termination as a Failure to Accommodate**

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." *Snapp*, 889 F.3d at 1095 (citing 42 U.S.C. § 12112(b)(5)(A)). Here, the parties again argue whether or not Hunter is a qualified individual under the ADA. As the Court has already stated, this question is a question for the jury. The parties agree the Texas Roadhouse received adequate notice. They dispute, however, whether there was a reasonable accommodation available. More specifically, the

parties disagree on whether an employer's decision to terminate and employee alone qualifies as failing to provide a reasonable accommodation.

"Reasonable accommodation" is defined as:

(i) Modifications or adjustments to a job application process that enable a qualified applicant with a disability to be considered for the position such qualified applicant desires; or
(ii) Modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position; or
(iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities.

29 C.F.R. § 1630.2(o). Reasonable accommodations are as unique as the employees they serve and thus there is no exclusionary list of reasonable accommodations and employer may provide. However, such accommodations may include a leave of absence for medical treatment, *Humphrey v. Memorial Hosps. Assoc.*, 239 F.3d 1128, 1135 (9th Cir. 2001); a reader or voice synthesizer program for an employee who is blind, *Leine v. California Dep't. of Rehab.*, 1999 WL 1178967, at *2 (9th Cir. 1999); and access to lunchrooms, employee lounges, rest rooms, meeting rooms, and other employer-sponsored services such as health programs, transportation, and social events, *Roloff v. SAP America, Inc.*, 432 F. Supp. 2d 1111, 1113 (D. Or. 2006). The duty to provide reasonable accommodations "only applies to qualified applicants or employees with disabilities." 29 C.F.R. § 1630, App.

It is the plaintiff who bears "the burden of showing the existence of a reasonable accommodation that would have enabled him to perform the essential functions of an

available job." *Dark v. Curry Cty.*, 452 F.3d 1078, 1088 (9th Cir. 2006). In the Ninth Circuit, once an employer is notified of an employee's need for an accommodation, the employer has "a duty to engage in an 'interactive process'" with the employee to identify and implement any reasonable accommodations. *Snapp*, 889 F.3d at 1095 (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111–16 (9th Cir. 2000) (en banc), vacated on other grounds sub nom., *US Airways, Inc. v. Barnett*, 535 U.S. 391, 406 (2002). "[I]f an employer receives notice and fails to engage in the interactive process in good faith, the employer will face liability *if a reasonable accommodation would have been possible*." *Id.* (emphasis in original) (quotations omitted); *see also Dark*, 452 F.3d at 1088 ("Because the County did not engage in [the interactive] process, summary judgment is available only if a reasonable finder of fact *must* conclude that there would in any event have been no reasonable accommodation available.") (quotations omitted).

Here, neither party has cited to, nor has the Court been able to locate, any case law analyzing whether the sole act of termination is enough to hold an employer liable for failure to accommodate. Based on the legal authority the Court did review, however, the Court concludes that termination alone cannot impose liability on an employer for failure to accommodate.

An employer is not required to provide accommodations to non-employees, but only to "qualified applicants or employees with disabilities." *Id.* In other words, the employer's duty to provide accommodations begins with an individual's application and ends when that individual is no longer employed by the employer. If reasonable accommodations are "modifications or adjustments" that allow an employee with a disability to perform the

functions of his job, 29 C.F.R. § 1630.2(o), then naturally the employee must have a job for the employer to accommodate. This leads to the conclusion that once an individual is no longer employed, there is no longer a duty to accommodate. Thus, there is a distinction between an employer's failure to provide accommodations while the employee is employed and the employer's decision to terminate an employee with a disability; the former prevents an employee from performing the essential functions of a job because of their disability, while the latter prevents an employee from performing the essential functions of a job because they simply no longer have that job.[6]

It is important to note that this reasoning does not provide an escape to an employer who fails to provide accommodations to an employee with a disability yet fires that employee before that employee has a chance to make a claim. Firing an employee does not erase an employer's failure to accommodate during that employee's tenure. Had Texas Roadhouse refused to continue to provide the numerous accommodations it was providing to Hunter at any point while he was employed—not allowing him to recover in the office, refusing to change his schedule, etc.—Hunter could certainly have a claim for failure to accommodate. It is equally important to note that an individual with a disability whose employment has been terminated still has a remedy, albeit through a different cause of action for unlawful termination—a cause of action that this Court has ruled that Hunter may present to a jury.

---

[6] This reasoning applies also to Hunter's claim that Texas Roadhouse failed to engage in the interactive process. If there is no duty to accommodate a non-employee, there is no duty to engage in the interactive process with a non-employee.

The Court is sympathetic to Hunter's position, but the facts here don't give rise to a cause of action for failure to accommodate. Hunter admits that Texas Roadhouse followed Dr. Talcott's recommendations, provided a paid leave of absence and a bonus to seek medical treatment, and its employees aided Hunter in his seizures by walking him to the office to recover, giving him his medication, getting him a glass of water, covering his station for a few minutes until he was able to return to work, or driving him home. Hunter does not allege that Texas Roadhouse ever failed to provide an accommodation, nor did he ever suggest any other accommodations to Texas Roadhouse before it fired him.[7] There is simply no evidence that Texas Roadhouse failed to engage in an interactive process with Hunter or failed to provide any reasonable accommodations during Hunter's seven-year employment with it, and Hunter has not pointed to any authority that supports his contention that the sole act of termination qualifies as a failure to accommodate. Thus, summary judgment is appropriate in favor of Texas Roadhouse on Hunter's failure to accommodate claim.

---

[7] During discovery, Hunter for the first time suggested that Texas Roadhouse could have demoted him to a line-cook or transfer him to a front-of-house manager position. Hunter gave these suggestions long after Texas Roadhouse's decision to terminate Hunter's employment, thus they could not have contributed to the interactive process. Even had Hunter given them prior to his termination, neither of these accommodations were reasonable. A demotion is not an accommodation, but an adverse employment action. *Coons v. Sec. of U.S. Dep't. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) ("Coons suffered an adverse employment action when he was demoted."). Even if it were an accommodation, working as a line-cook would not have removed the Hunter from the dangers present in his position as a kitchen manager. Further, the front-of-house manager position was already filled, and an employer is not required to create a position or "bump" another employee to accommodate a different employee with a disability. *See Zamudio v. City of Oakland*, WL 1458203, at *6 (N.D. Cal. May 26, 2009), *aff'd*, 379 F. App'x 589 (9th Cir. 2010) ("[T]he City was not required to create a new position or "bump" another employee in plaintiff's favor."); *Watkins v. Ameripride Serv.*, 375 F.3d 821, 828 (9th Cir. 2004) (finding that the employer was not required to create a new position to accommodate plaintiff).

### C. Texas Roadhouse Inc. as a Proper Defendant

Unrelated to the analysis above, Texas Roadhouse Inc. moved for summary judgment on all claims against it, claiming that it was not Hunter's employer and thus cannot be liable under the ADA. The ADA requires the existence of an employer-employee relationship. *See* 42 U.S.C. §§ 12111(2), 12111(4), 12111(5)(A), 12112(a); *see also Fichman v. Media Ctr.*, 512 F.3d 1157, 1161 (9th Cir. 2008). An employee can have joint employers "if both employers control the terms and conditions of employment of the employee." *Collier v. Turner Indus. Group,* LLC, 797 F. Supp. 2d 1029, 1044 (D. Idaho 2011) (citing *EEOC v. Pacific Maritime Ass'n*, 351 F.3d 1270 (9th Cir. 2003)).

Hunter claims that a question of fact remains as to whether Texas Roadhouse, Inc. was his employer. For support, he relies on three facts: Texas Roadhouse is listed as a wholly owned subsidiary of Texas Roadhouse, Inc.; Texas Roadhouse, Inc. is included in the definition of "Company" in both Texas Roadhouse's Policies and Procedures Manual and the Code of Conduct; and that certain Texas Roadhouse documents reference Texas Roadhouse, Inc.

Texas Roadhouse, Inc. does little to respond to these allegations, other than stating that they are not enough to show an employer-employee relationship. Without more, though, the Court cannot grant Texas Roadhouse, Inc. summary judgment on this issue.

### V. CONCLUSION

Based on the evidence presented, the Court cannot conclude as a matter of law that Hunter is (or is not) a qualified individual under the ADA or, more specifically, that he posed a direct threat to himself or others. However, Texas Roadhouse provided reasonable

and sufficient accommodations to Hunter during his employment entitling it to summary judgment on Hunter's cause of action for failure to accommodate. Lastly, the Court cannot conclude as a matter of law that Texas Roadhouse, Inc. was not Hunter's employer.

## IV. ORDER

**IT IS HEREBY ORDERED THAT:**

1. Texas Roadhouse's Motion for Summary Judgment (Dkt. 17) is GRANTED with respect to Hunter's Failure to Accommodate claim and DENIED with respect to Hunter's Unlawful Discharge claim and with respect to its claim that Texas Roadhouse, Inc. is an improper defendant.

2. Hunter's Motion for Summary Judgment (Dkt. 21) is DENIED.

DATED: February 3, 2020

David C. Nye
Chief U.S. District Court Judge